JINA L. CHOI (NY Bar No. 2699718)
STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
 buchholzs@sec.gov
E. BARRETT ATWOOD (Cal. Bar No. 291181)
 atwoode@sec.gov
WADE RHYNE (Cal. Bar No. 216799)
 rhynew@sec.gov
AMANDA L. STRAUB (NY Bar No. 4396982)
 strauba@sec.gov
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

JOSEPH G. SANSONE (NY Bar No. 4043659)
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-1100

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| GUOLIN MA, | |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**SUMMARY OF THE ACTION**

1. This action arises from insider trading by Defendant Guolin Ma ("Ma" or "Defendant"), a Chinese citizen, in the securities of OmniVision Technologies, Inc. ("OmniVision"), a Santa Clara, California maker of optical semiconductor devices. Defendant obtained material non-public information in the course of his work on a consulting engagement for two China-based private equity firms ("PE Firm 1" and "PE Firm 2"; together, the "PE Firms") that were pursuing an

acquisition of OmniVision. Defendant used this information to purchase OmniVision stock in advance of the August 14, 2014 announcement that a group of Chinese investment firms, including PE Firm 2, had made a preliminary proposal to acquire OmniVision for $29 per share, an 18% premium to OmniVision's pre-offer price (the "Announcement"). The day of the Announcement, OmniVision's stock price rose 15%, from $24.60 to $28.29 per share, allowing Defendant to generate $367,387 in illegal profits.

2. Starting in or around early April 2014, Defendant, an optical physicist, was engaged as a consultant by the PE Firms to advise and perform technical due diligence on a potential acquisition of a company in the optical semiconductor industry. In the course of this consulting relationship, Defendant obtained the material non-public information that PE Firm 2 and a Chinese state-owned science and technology investment fund (the "Chinese Investment Fund") were jointly pursuing the acquisition of OmniVision.

3. In a series of purchases from April 25, 2014, through May 14, 2014, while in possession of this material non-public information, Defendant purchased 39,373 shares of OmniVision stock in two U.S. brokerage accounts for a total price of $746,474. After the Announcement, the value of Defendant's OmniVision stock rose to $1,113,862, representing total unrealized profits of $367,387.

4. By engaging in insider trading as described in this Complaint, Defendant has violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## JURISDICTION AND VENUE

5. The Commission brings this action pursuant Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

6. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

COMPLAINT                            2                            CASE NO.

7.  Defendant, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

8.  Venue is proper in this District pursuant to Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].  During the period described in this Complaint, OmniVision maintained its principal place of business in Santa Clara, California, in this District, and Defendant maintained a residence in Mountain View, California, in this District.  In addition, certain acts, practices, and courses of business that form the basis for the violations alleged in this Complaint occurred in this District.

## INTRADISTRICT ASSIGNMENT

9.  Under Civil Local Rule 3-2(e), this civil action should be assigned to the San Jose Division, because a substantial part of the events or omissions which give rise to the claim alleged herein occurred in Santa Clara County.

## THE DEFENDANT

10.  **Ma,** 58, is a Chinese citizen who maintained a part-time residence in Mountain View, California during the period described in this Complaint.  Ma obtained a master's degree and completed doctoral coursework in optical physics at a university in the United States and subsequently worked in the United States for a number of private and public technology companies.

## OTHER RELEVANT ENTITIES

11.  **OmniVision** is a Delaware company headquartered in Santa Clara, California, that develops and manufactures optical semiconductor devices for mobile phones, webcams, and other applications.  Its common stock was registered under Section 12(b) of the Exchange Act and traded on the NASDAQ Stock Market, LLC under the ticker OVTI until the closing of its acquisition by a Chinese consortium on January 28, 2016.

12.  **PE Firm 1** is a China-based private equity firm formed in 2009 with offices in Beijing, Hong Kong, and Menlo Park, California.  PE Firm 1 has a portfolio of technology investments.

COMPLAINT                                                              3                                                         CASE NO.

13.     **PE Firm 2** is a Beijing-based private equity firm formed in early 2014 focusing on the semiconductor industry.

14.     **The Chinese Investment Fund** was in 2014 a Chinese-state-owned investment enterprise specializing in science and technology investments.

**FACTUAL ALLEGATIONS**

A.     **Defendant Provides Services as a Consultant for the PE Firms on a Potential Acquisition.**

15.     Prior to and in 2014, Defendant consulted regularly for PE Firm 1, monitoring current investments and evaluating potential investments in the area of optical technology. Defendant was aware that his consulting activities for PE Firm 1 might expose him to material non-public information about PE Firm 1's portfolio companies and other entities, and he understood that he should keep such information confidential. In March 2014, Defendant entered into a written confidentiality agreement with PE Firm 1 prohibiting him from trading on the basis of material non-public information learned through his consulting relationship with PE Firm 1.

16.     In early 2014, certain personnel from PE Firm 1, along with others, formed PE Firm 2 primarily to focus on semiconductor investments. During the period described in this Complaint, the Defendant and certain PE Firm 1 personnel, including a director of both PE Firms ("the PE Firm Director"), conducted PE Firm 2 business using the email and administrative resources of PE Firm 1, and in internal and external correspondence often did not distinguish between the two PE Firms.

17.     Also in early 2014, the Chinese Investment Fund was considering making an acquisition of a manufacturer of optical semiconductor products, such as imaging microchips for digital cameras, in the United States or China. The PE Firms and the Chinese Investment Fund discussed making a joint acquisition in that sector.

18.     According to the PE Firms, Defendant did not have a written consulting contract with either firm and did not receive up-front monetary compensation for his services. The PE Firm Director did, however, inform Defendant that there would be an opportunity for him to obtain carried interest (a share of management profits) in PE Firm 2 if Defendant's services proved valuable. The

1   PE Firm Director had also provided Defendant with at least one lucrative financial opportunity in the
2   past.

3         19.     On April 3, 2014, working in his capacity as a consultant for the PE Firms, Defendant
4   accompanied the President of the Chinese Investment Fund on a visit to OmniVision's headquarters
5   in Santa Clara, California. Defendant relayed information about the meeting and the Chinese
6   Investment Fund President's views on aspects of OmniVision's business to the PE Firm Director,
7   who had been a co-founder of OmniVision.

8         20.     Defendant entertained the Chinese Investment Fund President during the remainder of
9   the President's visit to the United States. Defendant discussed with the Chinese Investment Fund
10  President and his advisors the advantages and disadvantages of various potential acquisition targets.
11  Defendant advocated to the Chinese Investment Fund President that OmniVision was the best
12  acquisition target out of the possibilities they discussed.

13        21.     On April 10, 2014, representatives of the Chinese Investment Fund and the PE Firms,
14  including the PE Firm Director, met in Shanghai with OmniVision's CEO and discussed those
15  entities' interest in a going-private acquisition of OmniVision. Defendant was present at that
16  meeting.

17        22.     On or about April 11, 2014, a representative of PE Firm 2 instructed Defendant not to
18  trade in OmniVision stock and to keep information about the potential acquisition of OmniVision
19  confidential.

20        23.     On April 14, 2014, OmniVision contacted an investment bank to advise the company
21  on a potential going-private transaction. OmniVision management informed the company's board of
22  directors of the Chinese Investment Fund's interest on or around April 16, 2014.

23        24.     Between April 15 and April 20, 2014, Defendant received several documents via
24  email from representatives of the PE Firms indicating that the PE Firms were working on an
25  acquisition of OmniVision, including a draft timeline for the transaction and an "initial assessment"
26  that contemplated a buyout at a 30% premium to the price at which OmniVision shares were then
27  trading and relisting OmniVision in China.
28

COMPLAINT                              5                              CASE NO.

25. Also starting in mid-April 2014, Defendant had, on average, one meeting or call per week with representatives of the PE Firms that included discussions regarding the potential acquisition of OmniVision.

26. By virtue of his consulting engagement and correspondence with representatives of the PE Firms, and his meetings with the President of the Chinese Investment Fund, Defendant learned that the PE Firms and the Chinese Investment Fund were seriously considering an acquisition of OmniVision and had entered discussions with OmniVision about a potential transaction.

**B.     Defendant Purchases 39,373 Shares of OmniVision Stock.**

27. Defendant maintains a taxable brokerage account and an individual retirement account (IRA) at a major U.S. brokerage firm.

28. From September 2011 through September 2013, Defendant traded from time to time in OmniVision stock in these accounts, holding at most approximately 8,200 shares. As of early April 2014, Defendant held only 500 shares of OmniVision stock, which he had acquired in April 2013.

29. On April 25, 2014, less than a month after Defendant began providing consulting services to the PE Firms regarding a potential acquisition of OmniVision, Defendant began acquiring large quantities of OmniVision stock. His purchases were as follows:

| Date | Quantity | Price | Total Amount | Account |
|---|---|---|---|---|
| April 25, 2014 | 1,600 | $19.25 | $30,800 | IRA |
| April 28, 2014 | 2,000 | $18.99 | $37,980 | Taxable |
| April 28, 2014 | 5,000 | $18.88 | $94,400 | Taxable |
| May 7, 2014 | 10,000 | $18.99 | $189,900 | Taxable |
| May 7, 2014 | 10,000 | $19.01 | $190,100 | Taxable |
| May 7, 2014 | 773 | $19.01 | $14,694 | IRA |
| May 14, 2014 | 10,000 | $18.86 | $188,600 | Taxable |

30. Defendant's total cost basis (excluding transaction fees) for the OmniVision stock he acquired from April 25 through May 14, 2014, equaled $746,474. The newly acquired OmniVision shares constituted over 50% of the value of Defendant's total investment portfolio in both accounts as of May 31, 2014. As of that date, Defendant owned positions in five other companies, the largest of which had a value of approximately $277,000.

### C. PE Firm 2 Announces Its Offer to Acquire OmniVision.

31. On August 14, 2014, before the market open, a Chinese consortium led by PE Firm 2, and including the Chinese Investment Fund, announced a proposal to acquire OmniVision for $29 per share, an 18% premium over the prior day's closing price. In its press release, OmniVision indicated that its board was reviewing the proposal.

32. OmniVision's stock price rose 15% to $28.29 the day of the Announcement.

33. As a result of this price increase, Defendant generated unrealized profits of $367,387 on the OmniVision shares he purchased from April 25 through May 14, 2014.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

34. Paragraph numbers 1 through 33 are re-alleged and incorporated herein by reference.

35. The information communicated by the PE Firms to the Defendant about the potential acquisition of OmniVision by PE Firm 2 was both material and non-public. The information was considered confidential by the PE Firms, and the PE Firms communicated to the Defendant that he was to keep the information confidential. As a consultant to the PE Firms, Defendant owed a duty of trust or confidence to the PE Firms, and Defendant and individuals at the PE Firms, including the PE Firm Director, had a history, pattern or practice of sharing confidences regarding potential investments.

36. Defendant learned the inside information he used to make the securities transactions alleged herein during the course of his consulting relationship with the PE Firms, and Defendant knew or recklessly disregarded that he owed a duty of trust or confidence to keep the information confidential.

37. Defendant knowingly or recklessly used the inside information to place trades in his personal brokerage accounts.

38. By virtue of the foregoing, Defendant, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, directly or indirectly:

COMPLAINT                                               7                                       CASE NO.

a) employed devices, schemes, or artifices to defraud;

b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; or

c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

39. By reason of the foregoing, Defendant, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Permanently enjoin Defendant from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Enter an Order requiring Defendant to disgorge, with prejudgment interest, all illicit trading profits and other ill-gotten gains received as a result of the conduct alleged in the Complaint.

**III.**

Enter an Order requiring Defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

**IV.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: June 8, 2016

Respectfully submitted,

E. BARRETT ATWOOD
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION